**CV15-0471 TUC   EJM**

CIVIL RIGHTS COMPLAINT (October 2015) - Potter v. Veterans On Patrol | Civil Rights Dispute

Anthony Potter

702 S 6th Ave

Tucson, Ariz. 85701

ARIZONA

COUNTY

Anthony Potter.,

    Plaintiff,

    vs.

Veterans On Patrol

Lewis Arthur

Michelle Lewis

Eric Smaltz

Isreal Torres

Vallerie Roller

Kricket Mager

Luke C Lenard

Blaine Cooper

Keith Totten

property owners and property management over the dirt lot located on 22nd and 6th Ave on the northwest corner. Appoximate addresss 1156 S 6th Ave, also the address to be addentafied as the place of inccident .

Defendants.

Case No..

CIVIL RIGHTS

COMPLAINT

FILED _____ LODGED
RECEIVED _____ COPY
OCT - 5 2015
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

(Jury Trial Demanded)

VERIFIED COMPLAINT

Plaintiffs'—in propria persona—state for their Verified Complaint the following under penalty of perjury:

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief and monetary damages to redress the unconstitutional denial of Plaintiff's rights to free speech, expression, press and assembly, travel, safety and pursuit of happiness, guaranteed by the First and Fourteenth Amendments to the United States Constitution; and Plaintiff's rights under the Fourteenth Amendment to the United States Constitution to due Harrasment, threats, intimidation, charector assaisnation, defamtion of charector and use of force and equal protection violated by Veteran on Patrol Bravo Base management, Security and property ownership refusing use of a public side walk, free assembly, encouraging others to act in gang violence and spreading community and social media attention to have me harmed for information provide by memembers and online website, yet denying the exercise of this interest to Plaintiff to discriminate against and marginalize Plaintiff's message through use of conclusory justifications and the failure to articulate particularized facts to support the illegal arrest of defendant.

JURISDICTION

1). This Court has jurisdiction over Civil Rights Actions pursuant to Arizona Constitution Article VI, Section 18; and A.R.S. § 12-123(A). The Court has jurisdiction over the Federal Constitutional issues pursuant to 42 U.S.C. § 1983 and Felder v. Casey, 487 U.S. 131, 108 S. Ct. 2302, 101 L.Ed.2d 123 (1988).

2). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (in that they arise under the Constitution of the United States), § 1343(a)(3) (in that they are brought to redress

deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution), § 1343 (in that they seek to secure equitable relief under 42 U.S.C. § 1983), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

3). Venue is proper under 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims herein occurred in Pima County, in the State and District of Arizona.

4). This Court has the authority to grant damages, declaratory and injunctive relief, and any other appropriate relief pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

PARTIES

5). Plaintiff Anthony Potter is a natural citizen of the United States and of the State of Arizona, currently residing in the City of Tucson, in the County of Pima. Plaintiff is currently housed, a memember of independant press and an inpendant activist for the homeless, with a physical address of 99 South Church Ave., Tucson, Ariz. 85701. Plaintiff's mailing address is 702 S. 6th Ave., Tucson, Ariz. 85705. Plaintiff was a resident of Arizona during all relevant times to this action.

6) Veterans On Patrol ., who is a non legal entity of organized volenteers taking donations, and running a homeless camp in central tucson and phoenix, ran off private ownership and investors.Was a residing and operating in the City of Tucson, Pima County, Arizona, United States of America; and was at all times relevant to this Complaint. Veterons On Patrol is responsible for the mistreatment of plaintiff on date of incident.

7). Lewis Arthur, who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was the Chief Operator and property management at all times relevant

to this Complaint. He is and has been responsible for the promulgation and implementation of legal policies, procedures, and practices for Veterans On Patrol.

8). Defendant Michelle Lewis, who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and the duly-is a homeless activist helping to manage and outreach for Veterans on Patrol in the City of Tucson, Arizona, at all times relevant to this Complaint. She is and has been responsible for spreading the defemation and charector assaisination leading to the mistreatment of others .

9.) Defendants Eric Smaltz, Isreal Torres, Vallerie Roller,Kricket Mager, Luke C Lenard,Blaine Cooper,Keith Totten, who are natural persons were residents of the City of Tucson, Pima County, Arizona, United States of America; and the duly-appointed security at all times relevant to this Complaint. He is and has been responsible allowing mistreatment, bullying, threats and intimation and unsafety to the planiff and others at Veteran On Patrol Bravo base.

10.) Defendant Richard Fimbres, who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and the elected Council Person of Ward 5 in City of Tucson, Arizona, at all times relevant to this Complaint. She is responsible for the overall oversight and management of the neighborhood Veteran On Patrol operates in.

11). Defendant Jonathan Rothschild who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and is the duly-appointed Mayor of the City of Tucson, at all times relevant to this Complaint. He is responsible for the overall oversight and management of the City of Tucson.

12). Defendant City of Tucson is a Municipal Corporation, organized under the laws of the State of Arizona. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees; and for any injury occasioned thereby. It was also the public administrator of the area, responsible for licensing, zoning and safety concerns in the Area

13). Defendant Michael Ortega, is a natural citizen, of Tucson and Pima County and Arizona, at all times material to this Complaint, duly appointed Manager City of Tucson, at all times relevant to this Complaint. He is responsible for the overall oversight and management of the City of Tucson on a day to day bassis.

14). Plaintiff sues all Defendants in their official and individual capacities.

15). At all times material to this Complaint, Defendants officers John Does 1-20 acted toward plaintiff under color of the statutes, ordinances, customs, and usage of the State of Arizona, City of Tucson, and the Tucson Police Department. Officers Jon Doe 1-20 who are natural persons were residence of the City of Tucson, Pima County, Arizona, United States of America; and is the duly-appointed Mayor of the City of Tucson, at all times relevant to this Complaint. He is responsible for the overall oversight and management of the City of Tucson

FACTUAL ALLEGATIONS

16). Plaintiff is a member of #Activism Tucson, #OriginalTucsonCopBlock, #AlternativeJournalismColition and and wishes to bring light to the mass injustice of corporate power now running all governments.

17). #ActivismTucson is an organization operating in solidarity with #Occupy Tucson, #AllianceforGlobalJustice and #Occupy Wall Street, to educate the world about the reality that the future of the human race requires the cooperation of its members; that our system must protect the rights of all people; that although a democratic government derives its just power from the people,

corporations do not seek consent to extract wealth from the people and the Earth; and that no true democracy is attainable when the process is determined by economic power.

18). Plaintiff truly believes that his life—all human life—is dependent upon this message being disseminated as quickly and efficiently as possible to as many humans who have ears to hear their message.

19). The New York City General Assembly[1] occupying Wall Street has called out for the people of the world to exercise the right to peaceably assemble; to occupy public space; to create a process to address the problems we face, and to generate solutions accessible to everyone.

20). In accordance with this request, Plaintiff will continue to utilize all public fora as a medium to disseminate information, 24 hours a day, seven days a week, 365 days a year; until all people come to the realization that we must cooperate in order to become truly sustainable as humans, to leave a planet to our posterity, and perpetually exist here on Earth.

(21). The primary purposes of #Activism Tucson are to provide community services that are charitable, educational, scientific, literary, preventing cruelty to children or animals, and protecting our environment. The term charitable is used in its generally accepted legal sense and includes:

(i) Relief to the poor, the distressed, or the underprivileged;

(ii) Advancement of the civil and political rights of the homeless, disenfranchised, or underprivileged;

(iii) Advancement of education and science, to include advancement of educational and scientific knowledge aimed at creating and maintaining a perpetually sustainable human societal order;

(iv) Erecting and maintaining public buildings, monuments, works, and public land with an eye towards sustainability;

(v) Lessening the burdens of government by creating stream-lined and sustainable programs for human governance;

(vi) Lessening neighborhood tensions by introducing the consensus-based decision making process into neighborhood and community organizations;

(vii) Eliminating prejudice and discrimination by encouraging and fostering social integration;

(viii) Defending human and civil rights secured by law and international treaty; and

(ix) Combating community deterioration and juvenile delinquency.

24) Case Events

A. On September 27, 2015, at 1038 pm I was walking home on the sidewalk, heading east. I was approached by a man in camouflage, welding a hand pistol, a guard dog and an American flag. He asked what I was doing. He said he knew I had charges against me for being a child molester and told me I could not be in the area. I asked for his name and he failed to identify himself. I told him I was not, he said Michelle Lewis has said so, He said there were rape victims and I was making them uncomfortable. I told him how that can be if I am walking on a public sidewalk. He called others and told them I was a child molester. The people were also dress in camouflage, guns and flags, They became hostel and made threats to harm me and Encouraged people to harm me for it.

C. One person chased me, gun in hand down the street threatening to harm me seriously and without control if I don't leave the sidewalk.

D. Lewis Arthur encouraged a friend of mine, Chris Gates to not speak with me and told him I was a child molester. He also told Chris he could not remain in camp should he associate with me.

E. .) Defendants Eric Smaltz, Isreal Torres, Valerie Roller, Kricket Mager, Luke C Lenard, Blaine Cooper, Keith Totten, spread word I am a child molester to the people in the surrounding neighborhood, they held signs saying child molester with a arrow. They encouraged others to harm me and remove me from the public sidewalk. They told people I was stalking people and preying on them. Because of their actions, a group of 21 people circled me, making threats, pulling knives and guns to emphasis their point. Michelle Lewis filmed the actions. All of the above including Lewis Arthur took pictures and placed it on social media, including tagging media contacts.

F Officers drove by taking pictures and encouraged the behavior.

G. Statements from the group that I stalk politicians, that I was a child molester, that I disrupt community events, that I am a known drug dealer. That the police department has a reasonable beef with me and they support it and use the experience to solve their beef with me.

**Hardships claims:

1 I had numerous weapons pulled on me,

2 I had numerous threats and defamatory statements made to me by volunteers, management and property ownership all operating as Veterans On Patrol.

3 I was denied the right to travel, and the right to assemble free of harassment, intimidation or violence.

4 I was mentally and emotionally tortured under duress of weapons and violence by member of one group, same uniforms in a leadership and organized fashion.

5. My daily right to travel, right to rest, was hampered by not being allowed within the core of the neighborhood , making transfers from buses harder because all routes leading from one part of the city to the other travels through the zoned area.

6 Loss of gainful employment, the incident left me unrested, traumatized, and unable to function at work the next day.

3A. facts of claim:

1. a false statement concerning the plaintiff;

2. the statements was defamatory;

3 the statement was published to a third party;

the requisite fault on the part of the defendant; and the plaintiff was damaged as a result of the statement.

Morris v. Warner, 160 Ariz. 55, 62 (Ariz. Ct. App. 1988).

To be "defamatory," a statement must be false and bring the defamed person into disrepute, contempt, or ridicule, or impeach her honesty, integrity, virtue, or reputation. Godbehere v. Phoenix Newspapers, Inc., 162 Ariz. 335, 341 (Ariz. 1989).

These elements of a defamation claim in Arizona are similar to the elements discussed in the general Defamation Law section, with the following exceptions:

Defamation Per Se

Arizona distinguishes between statements that constitute libel per se and libel per quod. Libel per se are written communications which "on their face and without the aid of any extrinsic matter" tend to "bring

any person into disrepute, contempt or ridicule" or "impeach the honesty, integrity, virtue or reputation." Ilitzky v. Goodman, 57 Ariz. 216, 220-21 (Ariz. 1941). In contrast, libel per quod consists of written communications which "on their face do not fall within the definition [of defamation] but which by reason of special extraneous circumstances actually do." Id. at 221.

Arizona also distinguishes between statements that constitute slander per se and slander per quod. In Arizona, a statement that does any of the following is slander per se:

Charges a contagious or venereal disease, or that woman is not chaste; or

Tends to injure a person in his profession, trade, or business; or

Imputes the commission of a crime involving moral turpitude.

Modla v. Parker, 495 P.2d 494, 4 n.1 (Ariz. Ct. App. 1972). Slander per quod are "all slanderous utterances which are not slanderous per se." Boswell v. Phoenix Newspapers, Inc., 152 Ariz. 1, 6 n.4 (Ariz. Ct. App. 1985) approved as supplemented by Boswell v. Phoenix Newspapers, Inc., 152 Ariz. 9 (Ariz. 1986).

The distinction between libel per se and per quod and slander per se and per quod matters because it effects the type of damages a plaintiff must allege to prevail. To recover for libel or slander per quod, a plaintiff must allege special damages, i.e., lost profits or other "pecuniary loss." Boswell, 152 Ariz. 1, 6 n.4. In contrast, to recover for libel or slander per se, a plaintiff does not have to allege special damages and may instead allege non-pecuniary damages, such as damage to his reputation. Moreover, in cases of libel or slander per se, damages may be presumed if: The plaintiff is a private figure and the alleged defamatory statement involves a matter of purely private concern; Dombey v. Phoenix Newspapers, Inc., 150 Ariz. 476, 481 (Ariz. 1986) or actual malice is proven. Id.

*[signature]*                                                                                                    10/5/15